HMK/mb FS 7938

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MAN FERROSTAAL, INC.,

                Plaintiff,                       **ECF**

   -against-                         07 Civ. 8605 (LBS)

M/V OMER KAPTANOGLU, her engines,
boilers, tackle, etc., ILERI DENIZCILIK VE
TICARET AS, HACI ISMAIL KAPTANOGLU      JOINT PRETRIAL
SHIPMANAGEMENT & TRADING, LTD.,          ORDER
WESTERN BULK CARRIERS AS, WESTERN
BULK CARRIERS, KS

                Defendants.
------------------------------------------------------------X

With respect to the above-entitled matter, plaintiff and defendants submit their Joint Pre-trial Order pursuant to the Case Management Plan Order dated February 26, 2008.

### I. Trial Counsel:

Steven P. Calkins, Esq.
Kingsley, Kingsley & Calkins
Attorneys for Plaintiff
91 West Cherry Street
Hicksville, New York 11801
(516) 931-0064 (telephone)
(516) 931-4313 (facsimile)

Edward A. Keane, Esq.
Mahoney & Keane, LLP
Attorneys for Defendants
11 Hanover Square, 10th Fl.
New York, NY 10005
(212) 385-1422 (telephone)
(212) 385-1605 (facsimile)

## II. Federal Jurisdiction

Plaintiff alleges that this Court has jurisdiction pursuant to the Court's admiralty and maritime jurisdiction with respect to the carriage of goods by sea and federal jurisdiction is proper pursuant to 28 U.S.C. §1333. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 as to the other aspects of the claim.

Defendants agree.

## III. Summary of the Claims and Defenses

1. Plaintiff contends that defendants committed maritime torts and breached the contract of carriage and violated duties as ocean common carriers with regard to physical damage and shortage to plaintiff's cargo of loose pieces of steel pipe carried by the M/V Omer Kaptanoglu from Odessa, Ukraine to Houston, TX. Defendants' bill of lading no. 2MX (WBCA 100051051) dated November 6, 2006, was issued for the shipment at Odessa. A part cargo voyage charter party dated September 18, 2006, between defendant, Western Bulk Carriers, and plaintiff was entered into for the carriage of plaintiff's cargo.

The U.S. Carriage of Goods By Sea Act, 46 U.S.C. A. §30701 note, previously 46 U.S.C.App. §1300 et seq. ("COGSA"), applies *ex proprio vigore* to this foreign shipment to a U.S. port, and the Harter Act, 46 U.S.C.A. §30704 note, previously 46 U.S.C. §190 et seq., applies to the defendants' non-delegable duty to properly deliver the cargo.

The Clause Paramount in the charter party at clause 57 provides for the application of the Hague-Visby Rules to cargo damage claims in place of COGSA, and stipulates to the jurisdiction of the Southern District of New York.

Under both COGSA and the Hague Visby Rules, a *prima facie* case of liability is established against the ocean carrier by proof that the cargo was delivered to the carrier in good order and condition and outturned in damaged condition. Once a *prima facie* case for liability is established, the carrier has the burden of proof to explain the cause of the loss, and in order to exonerate itself from liability the carrier must prove the loss was caused by one of the enumerated exceptions of COGSA §1304(2) or Article IV, Rule 2 of the Hague Visby Rules, failing which the carrier will be liable for the total amount of plaintiff's damages.

The bill of lading for 795 pieces of unpackaged steel pipe was issued at Odessa by Liberty Shipping Services Ltd., an agent on behalf of the Master and Vessel, that contained Master's Remarks indicating the ends of seven (7) pipes were slightly nicked/scored, and five (5) pipes with beveled edges locally indented, among other remarks not related to the damage claimed by plaintiff herein.

Upon discharge of the steel pipe from the vessel at Houston, TX, the marine surveyor for plaintiff noted very tight stowage with pipe flush to the bulkheads of the cargo holds with numerous physical damages to the pipe consisting of end damages and wall dents, and thus found the cargo damaged

at outturn. As a result of this physically damaged condition, the pipe had to be sorted and segregated for repairs by Houston Tubulars, Inc., a local receiver and repairer of steel pipe, before the pipe could be delivered to or accepted by Ferrostaal's customer as prime pipe.

2. Defendants contend that the cargo of 795 very large diameter pipes were the subject of bill of lading exceptions to 21 pipes for physical defects of relevance here. The bill of lading is dated Odessa, Nov. 6, 2006. The cargo moved without shifting or other mishap and was discharged in the same condition as loaded at Houston Texas between Dec. 6 to 15, 2006 by stevedores employed by plaintiff. No exceptions to the manner of discharge were noted at the time. The stevedoring company issued no notices of damage or shortage during the vessel's attendance nor for a long period thereafter. All receiving tally sheets prepared by the stevedore noted the good order and condition of the cargo except for comments not relevant to this suit, e.g. light rust and scrapes. The inland carrier trucking receipts signed by both the truckers and the terminal note only the good order and condition of the cargo, again save for comments not relevant. Although both plaintiff and defendant had surveyors in attendance neither noted any specific exceptions to any pipes in any greater number than the 21 for which exceptions were noted at loading.

Although the cargo was intended to be direct discharged onto trucks the plaintiff failed to have sufficient trucks in attendance for that process. As a result some cargo was first landed on the terminal and subsequently re-handled at the Houston terminal. Eventually, all the cargo was loaded onto

trucks acting for the plaintiff and taken to another site at Pearland, Texas. What happened to the cargo from leaving the terminal to Pearland, Texas. is not known but what is known is that the vessel heard nothing further about the cargo until over a half year had passed. Eventually, a survey of the cargo was conducted on August 9, 2007. Plaintiff claims for normal handling damage identified in August 2007 in the form of damage to bevel ends of pipe, flat ends and wall damage. None of the claimed damage was reported in the tally records of Gulf Stream Stevedores at Houston in Dec. 2006. No trucker took exception to any such damage. All the damage is consistent with damage post vessel discharge and delivery.

Plaintiff also claims a shortage of three pipes. These very large pipes obviously were not simply lost. Likely, the supposed shortage is a simple failure to properly tally the cargo as it was trucked out of the terminal. But in any event, no records or evidence demonstrate the loss occurred, if any, during the period of time the vessel was responsible for the cargo.

Under the United States Carriage of Goods by Sea Act (COGSA), 46 U.S.C. 1300, as under the Hague-Visby Rules, plaintiff "has the burden, which remains with it throughout the case, of proving that 'the goods were damaged while in the carrier's custody.'" Caemint Food, Inc. v. Brasiliero, 647 F.2d 347,

351, 1981 A.M.C. 1801, 1807 (2d Cir. 1981). Defendants contend that plaintiff will be unable to meet its burden.

Where a bill of lading is claused, a plaintiff will be estopped from complaining that the cargo was delivered to the carrier in a condition inconsistent with those remarks. <u>Woodhouse, Drake & Carey, Inc. v. M/V Righteous</u>, 710 F.2d 1523, 1984 A.M.C. 479, 482 (11th Cir. 1983) ("[T]he exceptions in the Navale bills of lading are conclusive against appellant, the holder in due course. Appellant was on notice that the goods it purchased were damaged to the extent noted in the Navale exceptions.")

If the proof presented can not eliminate the possibility that the damage occurred after the cargo was outturned from the vessel, plaintiff's case should also fail. <u>Bally, Inc. v. M.V. Zim Am.</u>, 22 F.2d 65, 1994 A.M.C. 2762, 2770 (2d Cir. 1994) ("There is insufficient evidence in the record to support a finding that the 65 cartons of leather goods were missing at outturn . . . Accordingly, Bally has failed to prove the second prong of its <u>prima facie</u> case under COGSA.").

And, pursuant to COGSA:

> Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the carrier or his agent at the port of discharge before or at the time of the removal of the goods into the custody of the person entitled to delivery thereof under the contract of carriage, such removal shall be prima facie evidence of the delivery by the carrier of the goods as described in the bill of lading. If the loss or damage is not apparent, the notice must be given within three days of delivery.

46 U.S.C. ' 1303(6); see also, Bally, Inc. v. M.V. Zim Am., 22 F.2d 65, 1994 A.M.C. 2762, 2770 (2d Cir. 1994) ("There is insufficient evidence in the record to support a finding that the 65 cartons of leather goods were missing at outturn. Even if we had some doubt on this point, there certainly was insufficient evidence to overcome the presumption of good delivery created by '3(6). Accordingly, Bally has failed to prove the second prong of its prima facie case under COGSA."). Francosteel Corp. v. M/V Sherene, No. 91 Civ. 2809, 1992 WL 18266, 1993 A.M.C. 35, 36 (S.D.N.Y. Jan. 28, 1992) ("Defendants point, however, to the failure of Francosteel or its consignee virtue of the passage of time and alteration of the condition of the cargo, plaintiff has failed to establish that any damage to the cargo was the responsibility of the carrier.")

Plaintiff must prove damage at the time of outturn causally related to the ocean carriage. This court has stated the proposition plainly in Francosteel Corp. v. M/V Sherene, No. 91 Civ. 2809, 1992 U.S. Dist. LEXIS 778, *3, 1992 WL 18266, 1993 A.M.C. 35, 36 (S.D.N.Y. Jan. 28, 1992) ("[I]f, as may be sound

business practice, plaintiff opts for reasons of economy to defer an inspection of the product so that it is unable to make a claim of damage until considerable time has elapsed and the physical condition of the cargo is altered, it must either assume the risk of such damage, or seek by explicit provision in the contract of carriage, to preserve the right to make damage claims as belatedly and under the circumstances presented herein.")

Most recently, in Ferrostaal, Inc. v. M/V Tupungato, No. 03 Civ. 4885 (MGC), 2006 U.S. Dist. LEXIS 49070, *16, 2006 A.M.C. 1855 (S.D.N.Y. Jul. 19, 2006), this Court reiterated that, under COGSA, unspecific, general remarks at an outturn survey are not adequate to establish vessel responsibility for damages only subsequently documented in detail.  Plaintiff will be unable to prove that defendants caused damage to the coils. Plaintiff has failed to prove by a preponderance of the credible evidence that damage to the coils did occur while the coils were under defendants' control or the control of their agents.

Where bills of lading remain in the hands of the charterer, they are "mere receipts," and the charterparty remains the governing contract of carriage. See, Flat-Top Fuel Co. v. Martin, 85 F.2d 39, 1936 A.M.C. 1296, 1298 (2d Cir. 1936); Great Am. Ins. Co. v. M/V/ Handy Laker, 2002 U.S. Dist. LEXIS 26378, at *47-50, 2003 A.M.C. 116 (S.D.N.Y. Dec. 19, 2002), aff'd, 348 F.3d 352 (2d Cir. 2003).

<35><35>

Under such private carriage, COGSA does not apply <u>ex proprio vigore</u>, and "the safety of the stowage, insofar as cargo damage is concerned, generally is the primary responsibility of the charterer." <u>Nichimen Co. v. The Farland</u>, 462 F.2d 319, 332 (2d Cir. 1972). Unless the damage is attributable to some inherent defect of the vessel, rendering the vessel unseaworthy, the charterer is typically fully responsible for the state of the cargo. <u>Id.</u>; <u>see also</u>, <u>The Nidarholm</u>, 282 U.S. 681 (1931). Stated otherwise:

> The ship is the Owner's ship and the Master and crew his servants for all details of navigation and care of the vessel; but for all matters relating to the receipt and delivery of cargo, and those earnings of the vessel which flow into the pockets of the charterers, the Master and crew are the servants of the Charterers. There is, in fact (to borrow a simile from another branch of the law), an estate carved out of the ship and handed over for a specified term to the Charterer, and that estate consists of the capacity of the vessel for carrying freight and earning freight moneys, and the use of the vessel, Master and crew, for the advancement of the Charterers' gains.

<u>The Santana</u>, 152 F. Supp. 516 (S.D.N.Y. 1970).

Thus, the disponent owner will usually not be liable for cargo damage, even if the charterer signs a bill of lading "for the master." <u>Demsey & Assoc's v. S.S. Sea Star</u>, 461 F.2d 1009 (2d Cir. 1972); <u>Centennial Ins. Co. v. Constellation Enterprise</u>, 1987 A.M.C. 1155 (S.D.N.Y. 1986); <u>Tube Prod's of India v. S.S. Rio</u>

Grande, 334 F. Supp. 1039, 1971 A.M.C. 1629 (S.D.N.Y. 1971). Nor does language purporting to place cargo operations "under the supervision of the captain" operate to impose liability on the disponent owners for the manner in which the cargo was loaded and stowed. See, Spence v. Mariehamns R/S, 766 F.2d 1504, 1986 A.M.C. 685 (11th Cir. 1985). Even where the charter party requires that the cargo be loaded and stowed under the supervision "and responsibility of the captain" or under the supervision "and to the full satisfaction of the master," as a matter of law, the legal duty to provide adequate loading and stowage of cargo still does not shift from charterer to owner. Flynn v. American Auto Carriers, Inc., 2000 A.M.C. 986, 2000 (E.D.N.Y. 2000); Coca-Cola Co. v. The Norholt, 333 F.Supp. 946, 1972 A.M.C. 388 (S.D.N.Y. 1971).

Moreover, also as a matter of law, and especially in the absence of clear language providing for such a claim, a charterer can not recover damages against vessel owners based on the negligence of stevedores appointed by the charterer to load, stow, or discharge the cargo, regardless of whether the charter party may attempt to shift responsibility for such acts to the vessel by declaring the stevedores to be agents under the responsibility of the master. In North Am. Steel Prod's Corp. v. Andros Mentor, 1969 A.M.C. 1482 (S.D.N.Y. 1967), for example, Clause 33 of the charter party stated "[T]he stevedore, although

appointed by Charterers, shippers or receivers or their agents, to be under the direction and control of the Captain; Charterers, shippers or receivers, shall not be responsible for the acts and defaults of the stevedores at loading and discharging ports." Id. at 493. The court held that, "even if Clause 33 could be construed to apply to cargo damage, the provision thereof relieving Artco/Titan of responsibility for damage caused by the negligence of its own servant (the stevedore company) cannot be construed to impose liability upon San Juan, the other signatory to the voyage charter." Id. (citing United States v. Nielson, 349 U.S. 129, 131, 1955 A.M.C. 935 (1955) (rejecting such a clause, even though it stated that the third-party appointed by the plaintiff "becomes the servant of the owners of the vessel assisted")).

Charter party provisions aside, and even assuming arguendo still plaintiffs could establish a prima facie case, the carrier "may exonerate its responsibility by carrying its burden of proof that the damage did not occur because of its own acts." Associated Metals & Minerals Corp. v. M/V Arktis Sky, 978 F.2d 47, 1993 A.M.C. 509 (2d Cir. 1992) (finding material issue of fact with respect to whether vessel's agents were actively involved, along with shipper's stevedore, in loading and stowage of steel coils). In this case, plaintiff, not defendants, appointed the stevedores who carried out the loading, stowage, and discharge of the cargo. Any damage as a result of those activities are not the liability of defendants.

Carriers are only required to exercise due diligence to make its vessel seaworthy, i.e. sufficiently strong, staunch and equipped with the appropriate appurtenances to allow it to safely engage in the trade for which it was intended. 46 U.S.C. 1303(1)(a); Amerada Hess Corp. v. S/T Mobil Apex, 602 F.2d 1095, 1097 (2d Cir. 1958). If due diligence is found to have been exercised, no liability will inure to the carrier. 46 U.S.C 1304(1). In this matter due diligence was employed to make the vessel seaworthy.

Defendant also asserts insufficiency and inadequacy of marks, and that, should any liability be found, defendant contends it is entitled to limitation pursuant to 46 U.S.C 1300, et. seq.

The Cross-claim is not to be tried.

### IV. Statement of Damages

The cost for the repairs to the pipe by Houston Tubulars Inc. totaled $27,183.66, including sorting and segregating costs, and intrayard movements. The shortage of three pipes had a sound invoice value of $10,495.48 . The marine surveyor invoiced plaintiff $2,355.50 for the damage survey. Plaintiff's damages, including survey fees, total $40,034.64.

### V. Jury/Nonjury trial

This case is to be tried without a jury. A one to two day bench trial is expected.

## VI. No Trial before Magistrate Judge

There is no consent to a trial by the Magistrate Judge.

## VII. Stipulations of Fact or Law

There are no stipulations or agreed Statements of Fact or Law.

## VIII. List of Witnesses

Plaintiff's witnesses in person:

1. Mr. Steve Drobny of MAN Ferrostaal, Inc. to testify about the purchase, sale and payment for the goods, the transportation for the goods, and about the claim calculations and appointment of the surveyors;

2. Mr. John Zemanek, an expert marine surveyor, to testify about the condition and shortage of the pipe, surveys of the cargo, and handling of the claim;

3. Mr. Dennis Hayden of Houston Tubulars, Inc. to testify about the pipe damage and repairs and associated costs;

4. A representative of Gulf Stream Marine, Inc., the discharging stevedore to testify about discharge and delivery of the cargo and the cargo shortage;

5. A representative of Edgen Murray, plaintiff's customer to testify about the purchase, sale, payment, delivery and damage and shortage claims;

6. Rebuttal witness(es);

7. Impeachment witness(es);

8. Any witness(es) called by defendant.

Defendant's witnesses in person:

1. Capt. Raj Malhortra, Senior marine surveyor to Capt. G. K. Vallatos and Associates, Inc.

2. A representative of Western Bulk Carriers

3. Any witnesses listed by Plaintiff in this Joint Pre-trial Order

4. Rebuttal Witness(es)

5. Impeachment Witness(es)

## IX. Designations of deposition testimony

No deposition testimony will be offered by plaintiff, unless it becomes necessary to preserve testimony of witnesses more than one hundred miles from the jurisdiction of the Southern District of New York.

## X. Exhibits

Plaintiff's Exhibits:

1. Bill of lading no.2MX (WBCA 100051051) dated November 6, 2006

2. Charter party dated September 18, 2006

3. Packing List for bill of lading 2MX

4. Mill Test Certificate for bill of lading 2MX
5. Sales Contract with Thomas Pipe & Steel Division (Edgen)
6. Invoices to Thomas Pipe & Steel Division (Edgen)
7. Delivery Order to Houston Tubulars
8. Gulf Stream Marine Memo dated March 15, 2006 with enclosed OS&D reports
9. Western Bulk Release order to Gulf Stream Marine
10. M.G. Maher & Co. Delivery/Release order
11. Discharge Survey Report no. M10-61383 with photos
12. Zemanek letter to Master dated December 13, 2006
13. Damage Survey Report no. M10-71762 with photos
14. Damage Survey Invoice
15. Houston Tubulars Invoices and subpoenaed file
16. Edgen Murray subpoenaed file
17. Gulf Stream Marine Dock Receipts and Cargo Receipts
18. Credit Memos
19. Debit Memos
20. Claim Computation
21. Proofs of payment
22. Rebuttal documents
23. Impeachment documents

24. Any document offered by defendants

Defendant's Exhibits:

A. Botrans Cargo Condition Visual Inspection Report with all photographs and attachments, including w/o limitation stow plan documentation.

B. Capt. G. K. Vallatos and Associates, Inc. discharge survey report for the captioned vessel during Dec. 2006 with all photographs and attachments

C. Capt. G. K. Vallatos and Associates, Inc. damage survey report for cargo at Houston Tubular, Pearland, Texas during Aug. 2007 with all photographs and attachments

D. All records produced pursuant to subpoena by Houston Tubulars

E. All records produced pursuant to subpoena by Edgen Murray Corp.

F. All records produced pursuant to subpoena by Gulf Stream Marine, including Dock Receipt and Service Orders and Cargo receipts for all cargo moving under Bills of lading WBCA100051051 and WBCA100051052.

G. The complete file of Zemanek Marine Services, Inc. produced in response to subpoena.

H. All vessel protests and correspondence to terminals, stevedores or surveyors.

I. Bill of lading no. WBCA 100051052 dated November 6, 2006

J.  All documents listed by Plaintiff in this Joint Pre-trial Order

K.  Rebuttal Documents

L.  Impeachment Documents

Dated: New York, New York
August 11, 2008

| KINGSLEY KINGSLEY & CALKINS | MAHONEY & KEANE, LLP |
|---|---|
| Attorneys for Plaintiff | Attorneys for Defendants |
| By: _____/s/_____ | By: _____/s/_____ |
| STEVEN P. CALKINS | EDWARD A. KEANE |
| 91 West Cherry Street | 11 Hanover Square, 10th Fl. |
| Hicksville, NY 11801 | New York, NY 10005 |
| (516) 931-0064 | (212) 385-1422 |

SO ORDERED:

_____
U.S.D.J.